IN THE MATTER OF THE PETITION OF EDWARD BURKE, TO VACATE AN ASSESSMENT FOR CROSSWALKS, SOUTH-EAST CORNER OF WEST AND MORRIS STREETS.

*New York city — Assessment — § 7, chap.* 580, 1872.

An application to vacate an assessment, cannot be successfully made by a former lessee of the premises, who simply alleges that fact, and that he was, and still is, liable for the payment of the assessment.

In order to prove the employment of a newspaper, designated to publish official proceedings, its acceptance must be shown.

Section 7, chapter 580, of the Laws of 1872, relative to assessments in the city of New York, cures all irregularities, therein mentioned, in local assessments.* (DANIELS, J., not deciding this question).

APPEAL, by the Mayor, etc., of New York, from an order of the Special Term vacating an assessment. This case is in many respects similar in its facts to *Phillips* v. *The Mayor, etc., ante,* page 212.

*E. Delafield Smith,* for the appellants. †

*Neville & Andrews,* for the respondents.

DAVIS, P. J.:

The assessment in this case was confirmed on the 13th of April, 1868. The petition to vacate the same was verified the 17th of February, 1874. The petition, which is subscribed by the attorneys only, alleges that the petitioner was at the time of confirma-

* See Lennon v. The Mayor, 55 N. Y., 361.
† For points of counsel, see Phillips v. The Mayor, page 214.

tion, and still is the owner of the lots mentioned, and known and distinguished by ward numbers fifteen, sixteen, seventeen and eighteen. The proof does not sustain this averment. The only evidence on the subject, is found in the verification of the petition by Edward J. Burke, who testifies "that he is the son of the lessee named in the petition ; that at the time of the confirmation of the above named assessment, on the 13th day of April, 1868, the petitioner was the lessee of, and, as such, liable to pay, and still is held liable for the payment of, the assessment imposed on the lots mentioned and described in said petition by ward numbers fifteen, sixteen, seventeen and eighteen." According to the views expressed in the opinion, in *The Matter of the Petition of Samuel Phillips,* this evidence was altogether insufficient to show such an interest in the petitioner, in the lands affected by the assessment, as entitles him to institute and maintain this proceeding. It shows only, that he was a lessee of the lots, at the time of the confirmation, but the fair inference from the statement is, that he ceased to be such lessee before the filing of the petition. All that is shown beyond this, is the legal conclusion of the witness, that as such lessee, the petitioner was "liable to pay and still is held liable for the payment of the assessment." Liable to whom, or in what manner, or under what circumstances and conditions, is not stated. If we are to assume that his liability is upon the covenants of the lease, the instrument should have been produced, to show under what circumstances the liability would arise. It is not at all probable that he is liable to pay void assessments, and if not, then if this assessment be void as he alleges, there is no liability either in law or fact on his part, unless he covenanted to pay assessments of that character. If it be valid, and his liability to pay is a part of the consideration on which he holds the term, he is not at liberty to dispute its payment, because to pay the assessment is to discharge an obligation which forms part of the consideration of his lease. The lease having already terminated, as would appear from his proof, the existence of the assessment is no threat prejudicial to the quiet of his enjoyment of possession under the lease. Hence, there is no apparent ground on which he can maintain proceedings of this character. The landlord may be quite willing, voluntarily to pay the assessment. In that case, if it be invalid, no obligation

against the petitioner will arise, unless he covenanted to pay void assessments; in which latter case, the question of validity will also be immaterial, because he will only be called upon to perform the covenant by paying a part of the consideration of the lease; and it would not then lie in his mouth to assert any defense growing out of the alleged irregularities of the assessment. There is a complete failure, we think, in the case, to show any right on the part of the petitioner, to maintain this application. There was also a failure of proof to establish the alleged irregularity in respect of publication. The petitioner produced a certificate, signed by the comptroller under chapter 586 of the Laws of 1867, selecting and designating three daily and three weekly newspapers, " *wherein the proceedings of the common council or either branch thereof, and the notices of its committees shall be published during the year* 1867." The New York Leader is one of the weeklies named. There are several reasons why this proof was insufficient. First: The designation is, by its express terms, limited to the year 1867. All the proceedings in relation to the assessment in question, took place in 1868. There is no proof of a renewal of the appointment, nor of any fact indicating that the papers designated continued under any arrangement to make such publication in 1868. A search of files in the latter year, therefore, proved nothing. Second: There is no proof, whatever, that the New York Leader accepted the appointment, and assumed or entered upon the employment which the designation offered. What is said on this subject in the *Phillip's case*, is directly applicable to the present case. To fail, therefore, in finding the proceedings of the common council in the columns of the Leader, between the 3d February, 1868, and the 15th of February, 1868, fell wholly short of proving that the proceedings were not published in all the papers, *actually employed* by the city for such purposes. This conclusion is altogether in accordance with the ruling of the Court of Appeals, in *The Matter of Douglass*,\* which clearly recognizes that the papers in which publications are required to be made by the seventh section of the act of 1857, are only those *employed by* the corporation.

These reasons are adequate for a reversal of the order of the Special Term, but it seems to me very clear, that the case is within

\* 46 N. Y., 42.

the provisions of section 7, of chapter 580, of the Laws of 1872 ;*
and that all irregularities complained of, are cured by the remedial
provisions of that section. The order appealed from should be
reversed with ten dollars costs of the appeal, besides disbursements,
and the petition denied, with ten dollars costs of the court below.

BRADY, J., concurred; DANIELS, J., concurred, without deciding
what effect the act of 1872 should have in the case.

Order reversed and petition denied.